IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| RICARDO DAVILA, #540351 § | |
| § | |
| v. § | CIVIL ACTION NO. G-05-477 |
| § | |
| NATHANIEL QUARTERMAN § | |
| DIRECTOR, TDCJ-CID[1] § | |

**REPORT AND RECOMMENDATION**

Before the Court is the Petition for a Writ of Habeas Corpus of Ricardo Davila, a prisoner in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") (Instrument No. 1). Respondent filed a Motion for Summary Judgment with Brief in Support seeking the dismissal of Petitioner's writ because it is time barred (Instrument No. 15). Petitioner did not file a Response. Having carefully considered the Petition, the parties' motions and briefs, and the state court records, the Court submits its Report and Recommendation to the District Court.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 2241 and 2254. The State has custody of Petitioner pursuant to a judgment and sentence entered by the 23rd Judicial District Court of Brazoria County, Texas in Cause No. 26,675, on September 1, 1994. State Records ("S.R.") at 3-4. Petitioner was indicted for the offense of aggravated assault with enhancements alleged for purposes of punishment. S.R. at 2. Pursuant to a plea agreement,

---

[1] The previous named Respondent in this action was Doug Dretke. Effective June 1, 2006, Nathaniel Quarterman succeeded Doug Dretke as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nathaniel Quarterman is automatically substituted as a party.

1

Petitioner pled guilty to aggravated assault and "true" to the enhancements. S.R. at 3. He was sentenced to a term of eight (8) years confinement to be served consecutively or "stacked" with his sentence in "cause number 523104 out of [the] 232nd Judicial District Court of Harris County, Texas."[2] S.R. at 3.

No appeal was taken from this conviction. On August 29, 2005, Petitioner filed a state writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure (S.R. at 5), which was later denied by the Texas Court of Criminal Appeals on November 16, 2005. *Ex parte Davila*, Applic. No. WR-63,358-01. Petitioner filed the instant writ on August 26, 2005.[3]

*Statutory Limitations Issue*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitation period for state prisoners filing federal habeas corpus petitions. 28 U.S.C.A. § 2244(d)(1); *see also Fisher v. Johnson*, 174 F.3d 710, 711 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001) (recognizing the AEDPA explicit limitation period for state prisoners filing federal habeas petitions). The statute provides in part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of–
>
> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2] At the time of his 1994 conviction, Petitioner was serving a 13 year sentence in TDCJ-CID, which began in 1990. Pet'r Writ, Att. 4 at 2.

[3] This is the date that Petitioner declares he placed the writ in the prison mailing system. Fed. Writ. Pet. at 9. *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (mailbox rule applies to federal writ petitions).

>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>>
>> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C.A. § 2244(d)(1)-(2). Petitioner does not allege the application of either (B) or (C) to the AEDPA statute of limitations. 28 U.S.C. § 2244(d)(1)(B)-(C). Instead, Petitioner alleges that he is entitled to federal habeas corpus relief because his sentence, instead of running concurrently with his other conviction, has been stacked, resulting in a lack of release on parole (Pet'r Writ at 2; Att. 4 at 4-5). Considering his claim, the limitations period should not have begun to run until the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D).

Petitioner's judgment for the aggravated assault conviction clearly specified that this sentence would be stacked on "cause number 523104 out of [the] 232nd Judicial District Court of Harris County, Texas." S.R. at 3. The factual predicate was, therefore, discoverable on the date Petitioner was sentenced to an eight (8) year stacked sentence, which was September 1, 1994. Accordingly, the one-year period for filing a federal petition began no later than September 2, 1994, and expired on September 1, 1995. However, because this date preceded the enactment of the

AEDPA on April 24, 1996, Petitioner had until April 24, 1997, to file a federal writ of habeas corpus.[4] *Flanagan v. Johnson*, 154 F.3d 196, 200 (5th Cir. 1998). Petitioner did not file his first state writ until August 29, 2005, well after the expiration of the limitations period. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000), *cert. denied*, 532 U.S. 963 (2001) (holding state application filed after expiration of limitations period does not statutorily toll limitations period). Moreover, Petitioner's federal writ was not filed until August 26, 2005.[5] Accordingly, the Court concludes that Petitioner's federal writ is time barred by the one-year limitations period and finds no "rare and exceptional circumstances" to grant equitable tolling in this case. *Fisher v. Johnson*, 174 F.3d 710, 714-15 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Rashidi v. Am. President Lines,* 96 F.3d 124, 128 (5th Cir. 1996); *see also Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir.), *cert. denied*, 531 U.S. 1035 (2000) (it is well settled that ignorance of the law and lack of legal assistance, even for an incarcerated prisoner, generally do not excuse late filing).

The Court therefore **RECOMMENDS** that the Petition be **DISMISSED** on this issue.

*Detainer Issue*

Petitioner, who claims he was "almost born in the United States of America, raised since three years old" (Pet'r Writ, Att. 4 at 2), appears to question his status as an illegal or deportable alien and, as such, asserts that the detainer is illegal and should be removed from his TDCJ-CID

---

[4] Even to the extent that Petitioner were to claim that he was not then aware that his sentences were stacked, his pleadings certainly reflect that he was aware of it when he was not released in 2003 after serving his first sentence of 13 years, which he began serving in 1990, and for which he claims he served day-for-day (Pet'r Writ, Att. 4 at 2-3). Therefore, even assuming arguendo that he did not discover his sentences were stacked until 2003, he would still be time barred.

[5] The Court observes that the filing of his federal writ actually preceded the filing of his state court writ.

records. Pet'r Writ at 7; Att. 4 at 1-2. Petitioner also suggests that he is being discriminated against because other "immigrants have been detained in alike [sic] circumstances and granted U.S. citizenship, thus their detainers dropped." Pet'r Writ. Att. 4 at 1.[6]

Petitioner is not in custody as a result of any immigration charges. Instead, he is incarcerated on state convictions that are unrelated to his status as an alien. To the extent that Petitioner claims the INS[7] detainer is illegal, a habeas petitioner may not challenge the detainer lodged against him by way of habeas corpus until he is placed in the custody of the INS, an event which will not occur until Petitioner is released from his present term of confinement. *See Campillo v. Sullivan*, 853 F.2d 593, 595-96 (8th Cir. 1988), *cert. denied*, 490 U.S. 1082 (1989) (holding habeas relief as to INS detainer unavailable until prisoner placed in INS custody); *see also Prieto v. Gulch*, 913 F.2d 1159, 1162-63 (6th Cir. 1990) (same); *Fernandez v. I.N.S.*, No. 3:01-CV-0317-P, 2001 WL 435065, at *2 (N.D. Tex. April 20, 2001) (same), *adopted*, 2001 WL 493142 (N.D. Tex. May 7, 2001) (not designated for publication). Accordingly, this claim should be dismissed for lack of jurisdiction.

Moreover, as explained by the Fifth Circuit, "[f]iling a detainer is an informal procedure in which the INS informs prison officials that a person is subject to deportation and requests that [prison] officials given the INS notice of the person's death, impending release, or transfer to

---

[6] Habeas corpus relief is available for a prisoner's challenges to the validity of his conviction or fact or duration of his confinement. *Serio v. Members of the Louisiana State Board of Pardons*, 821 F.2d 1112 (5th Cir. 1987). However, claims of civil rights violations by inmates, such as the discrimination claim alleged herein, are more appropriately brought under 28 U.S.C. § 1983.42 U.S.C. § 1983. *See Cook v. Texas Dept. of Criminal Justice Transitional Planning Dept.*, 37 F.3d 166 (5th Cir. 1994).

[7] The Immigration and Naturalization Service ("INS") has been transferred into the Directorate of Border and Transportation Security within the Department of Homeland Security and is now known as United States Immigration and Customs Enforcement ("ICE"). Nevertheless, for purposes of these findings the Court will refer to the INS.

another institution." *Giddings v. Chandler*, 979 F.2d 1104, 1105 n.3 (5th Cir. 1992). The detainer has not altered his status as a custodial detainee of the state prison system who is subject to the consequences of serving consecutive or stacked sentences. *See Ex parte Cowan*, 171 S.W.3d 890, 893 (Tex.Crim.App. 2005) (Article 42.08 of the Texas Code of Criminal Procedure provides that when an inmate has consecutive sentences, the second sentence commences when the first sentence ceases to operate; and the first sentence ceases to operate when it is served out in full day-for-day (actual calendar time) until discharge or receiving vote of approval for parole by parole panel).[8]

The Court therefore **RECOMMENDS** that the Petition be **DISMISSED** on this issue.

## CONCLUSION

For all the reasons stated herein, the Court **RECOMMENDS** that Respondent's Motion for Summary Judgment (Instrument No. 15) be **GRANTED**; and the Petition for a Writ of Habeas Corpus of Ricardo Davila (Instrument No. 1) be **DISMISSED as time-barred and for lack of jurisdiction.**

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties. The Parties **SHALL** have until **November 8, 2006**, in which to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections SHALL be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553. Any Objections filed SHALL be contained in a written document specifically

---

[8] Petitioner does not appear to claim that the TDCJ-CID has denied him participation in programs or early release due to the detainer. However, even to the extent that he does, Petitioner, by his own admission, has not exhausted his state administrative remedies and, as such, any such claim would be unexhausted and subject to dismissal. *See Ex parte Palomo*, 759 S.W.2d 671, 674 (Tex.Crim.App. - 1988) (matters relating to classification, disciplinary proceedings, or good time credits are reviewed through the grievance process).

entitled **"Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration. Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas this _____19th_____ day of October, 2006

_____
John R. Froeschner
United States Magistrate Judge